588    SUPREME COURT OF INDIANA.

The United Life, etc., Ins. Co. *v.* The Pres., etc., Ins. Co. of North America.

## THE UNITED LIFE, FIRE, AND MARINE INS. CO. *v.* THE PRESIDENT AND DIRECTORS OF THE INS. CO. OF NORTH AMERICA.

FIRE INSURANCE.—*Principal and Agent.*—*Ratification.*—A. and B. were equal partners in the business of insurance agency at the town of N., the former alone being the agent of some companies, the latter alone of others, and both jointly of others, they having a common office and acting together in soliciting business, the profits from all the agencies being divided between the partners. During a temporary absence of A., a policy of re-insurance in a certain company of which he alone had been appointed agent at N., and concerning which he alone had complied with the statute relating to foreign insurance companies, was, upon application, issued, countersigned by B., in the firm name, as agents. It had been understood between A. and B. and the agent who had appointed A., that B. was to participate in the business and instruct A. in its duties. The policy contained a provision that it should not be valid unless countersigned by the company's duly authorized agent at N. The policy had been previously signed by the president and secretary of the company. The premium was paid to B. and accounted for by A., in his next monthly report to the company, A. having returned to N., and having been informed of the issuing of the policy and of its having been so countersigned in the firm name. Before making said report, A. was wrongly informed that the insured property was being removed to another state. The general agent of the company, upon being informed of the issuing of the policy and receiving a copy thereof, made some objections to A. as to the character of the risk, and A. informed said general agent that the property was being removed from the State, and that the policy would be cancelled. The re-insured company was in no way connected with or responsible for the statement that the property was being removed, and had no information concerning the objections raised by the general agent. About one month after the issuing of the policy of re-insurance and the payment of the premium, the property was destroyed by fire, the premium not having been returned or tendered to the re-insured company, which had no notice of dissatisfaction of the company that issued the policy or of its desire to cancel it.

*Held,* that neither A. nor the general agent having taken any steps to undo the acts of B. by returning the premium, or seeking to have the policy cancelled, or giving notice of dissatisfaction to the re-insured, but having allowed the re-insured to rest under the belief that the risk was complete and satisfactory; there was a ratification by the general agent, and hence by the insurance company, of the issuing of the policy.

APPEAL from the Floyd Circuit Court.

DOWNEY, J.—This was an action by the appellant against the appellees. The first paragraph of the complaint was upon a policy of re-insurance, alleged to have been made by

the appellees to the appellant.  The second was upon a con-
tract of re-insurance in writing, alleged to have been exe-
cuted and delivered by the appellees to the appellant in the
usual form of policies of insurance issued by the appellees,
in every respect, except that it was not countersigned by
the agent of the company.  The third was upon an agree-
ment to re-insure, and set out a copy of the instrument,
which it was agreed should contain the provisions of the
contract, alleging that the appellees delivered the instrument
signed by its president and secretary, but failed and neglected
to have the same countersigned by its agent, although the
premium was received, and the risk assumed, and concluded
with a prayer for the reformation of the contract, so that the
same might be properly countersigned, for judgment for the
amount due under the agreement, and for general relief.

We think it unnecessary to notice particularly the different
paragraphs of the answer filed by the defendant.  A general
denial was filed, and also a paragraph of *non est factum*, to
all the paragraphs of the complaint.

Upon a trial of the cause by the court, there was a finding
for the defendants, a motion for a new trial was made and
overruled, and final judgment for the defendant rendered.

Several errors are assigned, and among others, it is alleged
that the court erred in overruling the motion of the appel-
lant for a new trial.  A disposition of this point will decide
the material questions in the case.  One of the reasons for a
new trial was, that the evidence was not sufficient to justify
the finding of the court.

We cannot well set out all of the evidence, on account of its
length ; but we will set out the material facts of the case, as
disclosed, so that the ground of our decision may be clearly
understood.  We may say, before doing so, however, that
the case turns mainly upon the question whether the policy
was countersigned by the agent of the company at New
Albany, or if not, whether the agent of the company at that
place, or the general agent of the company at Erie, Pennsyl-

vania, or both of them, so ratified and affirmed the act as to render it binding upon the company.

The principal office of the appellant was at Covington, Kentucky, and it had an agency at Louisville, in that State. The general office of the appellee was in Philadelphia, Pennsylvania. Its western department was under the management and control of J. F. Downing, general agent, his office being at Erie, Pa. At the time when the policy was written, and for some time before and afterward, Elijah Sabin and Samuel C. Fisher were equal partners at New Albany, in the business of life, fire, and marine insurance, representing several companies. They had been jointly appointed the agents of some of the companies. Sabin alone had been appointed agent of others of the companies, while Fisher alone was the appointed agent of the appellees, and perhaps of one or more other companies. Fisher alone had complied with the requirements of the statute relating to foreign insurance companies, so far as the appellees were concerned. They had a common office, acted together in soliciting business, and divided the profits arising from all the agencies between them. On the 28th day of August, 1866, the appellant, through its agent at Louisville, issued its policy of insurance to J. S. Hall & Co., upon their engine, shafting, machinery, patterns, flasks, and stoves, finished and unfinished, contained in the west wing of the Indiana state prison, at Jeffersonville, formerly used as a tobacco factory and cooper shop, as shown by a diagram of the prison, and then occupied by the assured as a stove factory. The policy was in the sum of ten thousand dollars, and was to run for one year. The policy of re-insurance, on which the first paragraph of the complaint is founded, was of the same date, and for the same time, and assumed one-half of the above named risk. The premium in the original policy was two hundred dollars, and that in the policy of re-insurance was one-half of that amount. The appellants afterward re-insured the other half of the risk in another company.

No further notice of this circumstance need be taken in disposing of this case, as this loss was adjusted and paid.

It is apparent from the evidence that Fisher was not an experienced insurer, when he was appointed the agent of the appellees, and that it was understood between Sabin, Fisher, and one Goodrich, the appointing agent of the appellees, that Sabin was to participate in the business of the agency, and instruct Fisher in the discharge of his duties. At the time of assuming the risk and issuing the policy of re-insurance, Fisher was absent from the office. A clerk or agent of the appellant went to the office with a memorandum of the amount of re-insurance desired, the time, description of the property, as in the original policy, etc., and not finding Fisher, presented the same to Sabin and requested the re-insurance. Sabin took the memorandum, and after examining it handed it to a clerk of the firm, in the office, to fill out the policy. The clerk took a blank form and filled up the policy as requested, the same being already signed by the president and secretary of the company. When this was done, Sabin wrote at the bottom the words: "Sabin and Fisher, agents." The statement of the policy with reference to the countersigning thereof is, that it "shall not be valid unless countersigned by said company's duly authorized agent at New Albany, Ind.," and the words immediately preceding the signatures are these: "countersigned at New Albany, Ind., this twenty-eighth day of August, A. D., 1866." The policy was numbered 108, and is referred to by this number in the correspondence concerning it. The policy, in this form, was delivered to the clerk or agent of the appellant, but it was afterward returned the same day, that permission for further insurance might be indorsed upon, or inserted in it, which Sabin did in these words: "Other insurance allowed without notice unless required by this company." On the day of the date of the policy, or on the next day, the premium was paid to Sabin. Just when the premium was remitted or reported to the general agent at Erie does not appear, but it was the duty of Sabin

and Fisher, as it appears, to make monthly reports and accounts to the general agent. So that it might be presumed that it was reported to, and received at, Erie, early in September, if it were not for the evidence of Fisher, who testifies, and whose report shows, that it was embraced in his September report, which report was in his own handwriting. Prior to this date, Fisher had returned to New Albany, and was made acquainted with the fact that the policy had been issued by Sabin in the name of Sabin and Fisher, as agents. It appears that before the report for September was made, on or about the 20th of that month, Fisher, in negotiating insurance in favor of another party, on property at the prison, got the impression, from that party, that the property on which the risk had been taken by the appellant, and which, in part, was re-insured by the appellees by policy No. 108, had been removed, or was being removed, to Louisville, by which the risk would be terminated. The appellant was in no way connected with this misunderstanding on the part of Fisher. This information, however, turned out to be incorrect. Downing, the general agent at Erie, had been absent from his office during the first part of September, but having returned on the 19th day of September, 1866, he wrote to Fisher as follows:

"ERIE, PA., Sept. 19th, 1866.
"S. C. FISHER, Esq., New Albany, Ind.:
"DEAR SIR, Copies of policies Nos. 108, 109, and 110, have just come to hand. I am somewhat suprised that you should have put us on the special hazard covered by policy 108, without previous reference to this office by application and survey. Those prison risks, owing to the extra moral hazard, are considered specially undesirable, particularly, when they are also of the special hazard class. We very much desire to know what kind of building it is that contains the engine, machinery, and stock insured. If brick or stone, we may conclude to carry the risk. Please send us application and full survey at your earliest convenience. As a rule,

please note that we desire all specials to be referred to this office before issue of policy.

"Yours very truly,

"J. F. DOWNING, Gen. Agent."

In answer to this, Fisher wrote as follows:

"NEW ALBANY, IND., Sept. 27th, 1866.

"MR. J. F. DOWNING, Esq.:

"DEAR SIR, I send application of Messrs. Hall, Moore, and Miller, and want your answer. The first application got misplaced, if not sent. Application No. 108, as I stated, was moved yesterday, and policy will be cancelled. I presume that don't matter to us, if they moved the property to another locality; they are moving it out of the State to Louisville, Ky. I hope all will be satisfactory; excuse any wrong in business on my part, as I have been absent from the office most of the time this month, on account of sickness. I will attend to business myself now and make all satisfactory.

"Yours very respectfully,

"S. C. FISHER, Agent."

And on October 1st, 1866, the day of the fire, he wrote to Downing a letter, of which the following is the postscript:

"P. S. Messrs. Hall, Moore, and Miller, on policy No. 108, have not sent in their policy yet to have it cancelled. They have moved the most of their stock; that I presume it does not matter to us, as the policy is void if the goods are removed without permission.

"S. C. FISHER, Agent."

On the 6th of October, 1866, Downing wrote to Fisher as follows:

"ERIE, PA., October 6th, 1866.

"S. C. FISHER, Esq., New Albany, Ind.:

"DEAR SIR, Your favor of the 1st inst. came duly to hand.

VOL. XLII.—38

Contents noted. Pleased to hear that we escaped loss by not renewing policy No. 13; but how about No. 108? You say you were expecting that policy would be sent in for cancellation, that the property had been nearly all removed. I see that a fire occurred at the prison on the night of the 1st, just after date of your letter, and have been looking anxiously for a letter from you, with information as to the result. Nothing coming to hand, I take it for granted we escaped loss. I trust this is so. Should dislike to get our fingers burned so soon, as penalty for going outside our rules of business.

"Yours very truly,

" J. F. Downing, Gen'l Agent."

On October 2d, 1866, Fisher wrote to Downing, informing him of the loss, but the letter is not in evidence. The answer to it is as follows:

"Erie, Pa., October 6th, 1866.

"S. C. Fisher, Esq., New Albany Ind.:

"Dear Sir, Yours of the 2d inst. just to hand, informing us of loss under policy No. 108. This is unexpected, as you state, in your letter of the 27th ult. and the 18th inst., that property covered by policy No. 108 was being removed. 'Nearly all out,' you say in letter of the 1st. It must be that you meant to say policy No. 113. Were it not for this error, we would not have had more than $2,500 on No. 108, the most we would have carried, since we make it a rule to keep out of state's prison. Mr. Higgins will go down and fix the thing up.

"Yours very truly,

" J. F. Downing, Gen'l Agent."

The evidence shows that Higgins did "go down," but did not, as seems to have been intended, adjust the matter. The proofs of the loss were made, to which there is no objection. The appellant paid the loss on the original policy, but the appellee refused to pay the loss under the policy of re-insurance. Downing wrote a final letter, of date the 27th

of December, 1866, in which he assumed two grounds, on which the appellees are not liable: 1. That the appellant did not retain one-half of the risk insured; and, 2. That the policy was countersigned by Sabin and Fisher, and not by Fisher alone. In this letter he makes this statement:

"The risk in question was never accepted by this company, but, on the contrary, was immediately objected to on our receiving the report thereof; the fact that the policy, so called, not having been taken up, being attributable to a misunderstanding of our agent, S. C. Fisher, in regard to the removal of the property. Mr. Fisher having reported to us that the property covered by said policy was being removed to Louisville, Ky., and that we had nothing at risk, a mistake on the part of Fisher, as it subsequently appeared, so far as the removal was concerned."

There is no evidence to show that the appellant had any notice, at any time, of any dissatisfaction of the appellees as to the risk which they had taken, or of any desire on their part to cancel the policy. The premium was not returned or even tendered back to the appellant, until in December, 1866, or later, and long after the fire, by which the property was destroyed, occurred.

We are aware of the general rule, that an agent can not delegate the powers conferred upon him by his principal, by conferring them upon another, unless he has been specially empowered by the principal to do so; and here it might be a question of some difficulty whether Fisher could authorize Sabin to act in his stead as the agent of the appellees, if it was necessary to put the case upon that ground exclusively. Fisher alone had been appointed agent of the appellees according to the requirements of the statute on the subject of such agencies, and it is fair to presume that he had been appointed on account of his supposed qualifications and fitness for the agency. Such is the reason of the rule, at all events, whatever may have been the facts in this particular case. In speaking on this subject, Judge STORY says: "This being a trust or confidence reposed in the agent personally,

it cannot be assigned to a stranger, whose ability and integrity might not be known to the principal, or who, if known, might not be selected by him for such a purpose." Story Agency, sec. 13. Whether a risk shall or shall not be taken upon property offered for insurance, is a question of the greatest moment, and one upon which the company might wish and be entitled to the judgment of its designated and appointed agent. Whatever may have been the intelligence, discretion, integrity, and business capacity of Sabin, he was not the man who had been designated and appointed by the appellees as their agent for the discharge of the duty in question.

But this consideration does not dispose of the case. When Fisher returned to the office, he was fully informed as to what Sabin had done in his absence, and, although the evidence shows that he made some objection to Sabin, as to the manner in which the business had been done, he did not take any steps to undo it, by returning the premium and cancelling the policy, or even by giving any notice of his dissatisfaction to the re-insured. On the contrary, he accounted for the premium to the general agent, and sent him "copies of policies Nos. 108, 109, and 110," as shown by the letter of Downing of September 19th, 1866. As Downing received a copy of the policy No. 108, he had notice of the fact that it was countersigned, "Sabin and Fisher." Downing, in that letter, although he expresses surprise that Fisher should have put them on the special hazard covered by policy 108, without previous reference to that office by application and survey, does not repudiate the act of Fisher or of Sabin and Fisher, but, on the contrary, expresses a willingness under certain circumstances to "carry the risk." He desires Fisher to give him further information as to the condition and nature of the property at risk, and for that purpose asks to have sent to him the "application and full survey." During all this time, as Downing must have known, the appellant is resting under the belief that the risk is complete and satisfactory to the appellees.

Fisher sent the application in his letter of September 27th, 1866, and in this letter makes a statement which turns out to have been untrue, resulting from a mistake of his own or his informant, with which the appellant was in no way concerned. An allusion to this same matter is the subject of the postscript to his letter of October 1st, 1866, written on the day of the fire, but before it occurred. If, when Downing received the application for which he wrote, he concluded not to " carry the risk," he failed, so far as appears, to make that fact known to any one. On the contrary, it seems pretty clear that he did conclude to carry the risk, as otherwise he would not have inquired so anxiously about "No. 108," when he saw that a fire had occurred at the prison, as he did in his first letter of October 6th, 1866. Why, in any other view of the case, would he express so much anxiety for a letter from Fisher with information as to the result, and hope that his company had escaped loss. Why should he express his " dislike to get our fingers burned so soon," etc. But we think the second letter of Downing of October 6th is conclusive on this subject. He then attributes the fact that they had more than $2,500 to Fisher's error in writing that the insured property was being removed from the prison, and ends with the statement, that " Mr. Higgins will go down and fix the thing up." The extract from Downing's last letter, in which he attempts to show that the company is not liable, which we have given, attributes to Fisher's misunderstanding as to the removal of the property the fact that the policy had not been " taken up." It was not generous in Downing to attempt to shield his company on the ground of a mistake of his own agent, with which the appellant had no concern. Indeed, it was not even legal that he should do so; for if any one must suffer from the mistake of the agent it must be the principal, and not third persons.

We have no doubt that it should be held, under the circumstances disclosed, that there was a ratification by the general agent, Downing, and hence by the company, of the

issuing of the policy in this case, and the countersigning of it.   To hold otherwise would be to hold that the company, with a full knowledge of the facts, and with the premium for the risk in its hands, the assured believing and having the right to believe that the contract was valid and binding, could escape from the liability which it knew to be resting upon it.   This we are not willing to do.   On this question we refer to the case of the *Ætna Ins. Co.* v. *Maguire,* 51 Ill. 342, and also *Insurance Co.* v. *Webster,* 6 Wal. 129.

We cannot regard the statute relating to agents of foreign insurance companies as affecting the case, in the view which we have taken of it.   Fisher, the duly appointed agent, adopted and acted upon what Sabin had done in his absence, and Downing ratified and approved what had been done by both and each of them.   In our opinion, the court should have found for the appellant on the first paragraph of the complaint.

We have not been favored with a brief from the appellee.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.

*G. V. Howk, J. H. Stotsenburg,* and *T. M. Brown,* for appellant.