Willcuts *v.* The Northwestern Mutual Life Insurance Company.

| | |
|---|---|
| 81 | 300 |
| 124 | 512 |
| 125 | 86 |
| 125 | 195 |
| 81 | 300 |
| 130 | 4 |
| 81 | 300 |
| 132 | 72 |
| 81 | 300 |
| 134 | 685 |
| 136 | 684 |
| 81 | 300 |
| 144 | 451 |
| 81 | 300 |
| 159 | 675 |
| 81 | 300 |
| 163 | 393 |
| 81 | 300 |
| 171 | 414 |

### No. 8649.

## WILLCUTS *v.* THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY.

DEMURRER TO EVIDENCE.—*Practice.*—A demurrer to the evidence admits all facts which the evidence tends to prove, and all such inferences as can be reasonably drawn therefrom, but forced and unreasonable inferences are not admitted.

SAME.—*Effect of.*—The effect of a demurrer to the evidence is to concede the truth of all the facts of which there is any evidence against the demurring party, and to prevent him from insisting upon the benefit of evidence in his favor, if there is a conflict in the evidence.

LIFE INSURANCE.—*Provision Forfeiting Policy for Non-Payment of Premium.*— Where a policy expressly and fully provides that a failure to pay premiums at the times therein stipulated shall cause a forfeiture, the failure to pay as stipulated will, unless some excuse or waiver is shown, work a forfeiture of the policy.

SAME.—*Right to Recover Proportionate Part of Insurance on Partial Payment of Premium.*—Where the policy expressly provides that a failure to pay premiums at the times stipulated shall cause a forfeiture, the insured is not entitled because of payment of part of the premium to recover a proportionate amount of the policy. In such a case the rule that where one does work under a special contract, but does not perform the entire contract, he may recover upon the *quantum valebat,* has no application, for such a contract of insurance is an indivisible one.

SAME.—*Custom as to Payment of Premium.*—A custom, that a payment of the premium may be made in a different manner from that provided in the policy, can not, even upon a demurrer to the evidence, be inferred from a single act. The fact that the insurance company in one instance allowed credit to the insured for a claim for services, and accepted the balance of the premium in money, does not warrant the inference of a custom to accept pay in services.

SAME.—*Policy. — Conditions.— Covenants.*—Where there is a full and valid express covenant or condition in a policy of insurance, there can be no implied one, respecting the same subject.

SAME.—*Modification of Policy by New Parol Contract.*—A policy may be modified by a new and distinct parol contract.

SAME.—*Member of Mutual Insurance Company.*—The fact that the insured becomes a member of a mutual life insurance company does not prevent a lapse of his policy and a termination of liability upon it by reason of his failure to perform the conditions required by the terms of the policy to keep it in force. The stipulations of the contract and its construction are none the less binding, because made between the corporation and a member.

SAME.—*Waiver of Condition in Policy.—Power of General Agent.*—A general agent of a foreign insurance company, possessing competent authority, may waive the condition in the policy that the premium should be paid in money. A mere local agent could not. (As to what will constitute such waiver see opinion p. 309.)

SAME.—*Payment of Part Premium.*—An insured member of a mutual life insurance company is not entitled to a proportionate part of the amount of his policy of insurance, when only a part of the premium is paid, in contravention of the conditions of the policy, that if not paid on a certain day it should cease.

SAME.—*Tender of Premium.*—An insurance company, by demanding more than it is entitled to receive, and notifying the insured that nothing but a compliance therewith will be deemed performance, will excuse the insured from tendering the premium; but a notice requesting payment of a premium, calling attention to the conditions of the policy, etc., can not be construed as intended to mean that the company repudiated an agreement to receive as part payment of the premium a bill for services of the insured, and excuse him from the payment of the balance of the premium, in accordance with the terms of the policy.

SAME.—*Construction of Policy.*—Where parties have, by their own acts under the policy, placed a construction upon a policy of insurance, the courts will carry that construction into effect.

From the Grant Circuit Court.

*F. M. Finch, J. A. Finch, G. W. Harvey, L. D. Baldwin* and —— *Baldwin,* for appellant.

*T. A. Hendricks, C. Baker, A. W. Hendricks, O. B. Hord, I. Van Devanter* and *J. W. Lacey,* for appellee.

ELLIOTT, J.—The complaint of the appellant is in three paragraphs. The first alleges that the appellee issued a policy of insurance upon the life of Leander E. Willcuts, the appellant's husband; that, at and prior to the time the policy was issued, the insured was appellee's examining physician for

Grant county; that the agreement between him and appellee was that the premium should be credited with the fees that should become due for services as medical examiner; that under this agreement the first semi-annual premium was paid partly in fees and partly in money; that afterward Dr. Willcuts examined applicants and became entitled to a credit of $3 on his second premium; that the appellant refused to allow the credit, and notified the insured that if he did not pay the whole premium in money, the policy would be declared forfeited; that he was ready and willing to pay the remainder of the premium, after the proper credit should be made; that the insured refused to accede to the demand, and forfeiture was declared. It is also alleged that the company is a mutual one; that the insured became a member of it, and that for this reason the policy could not be forfeited. It is further alleged that if the fees had been ratably applied, it would have kept the policy in force until October 16th, 1878, and that the insured died on the 8th day of that month.

The second paragraph is much like the first. In one material particular, there is a difference between the two. The former paragraph, instead of charging that an express agreement was made for the application of the fees of the insured to the payment of the premium, alleges that, by a custom acquiesced in by him and the company, they were to be so applied.

The third paragraph, in many respects, is similar to the first and second, but, omitting all reference to the agreement and custom concerning fees, alleges that a part of the premium was paid in money, and that, as the company was a mutual one and the insured a member, the beneficiary was entitled to a proportionate part of the insurance, although a part only of the premium was paid.

It is to be observed of all the paragraphs of the complaint, that they make due averments of death, proof of death, and kindred matters.

We have only outlined the complaint, and deem it unnecessary to give even a brief synopsis of the appellee's answer,

for the reason that the only questions in the case arise upon the demurrer addressed to the evidence by the appellee. The answers were sufficient to put the appellant to the proof of all the material facts essential to a cause of action under some one of the paragraphs of the complaint.

There are principles applicable to demurrers to evidence, which it is well to state at the outset:

First. A demurrer to the evidence admits all facts of which there is any evidence, and all inferences which can be logically and reasonably drawn from the evidence. *Fritz* v. *Clark*, 80 Ind. 591; *The Ohio, etc., R. W. Co.* v. *Collarn*, 73 Ind. 261; *Miller* v. *Porter*, 71 Ind. 521; *Newhouse* v. *Clark*, 60 Ind. 172; *Eagan* v. *Downing*, 55 Ind. 65; *Andrews* v. *Hammond*, 8 Blackf. 540; *McCreary* v. *Fike*, 2 Blackf. 374; Buller N. P. 313.

Second. All reasonable and natural inferences which may be drawn from the evidence are admitted, but forced and unnatural ones are not. In speaking of a party who had demurred to the evidence, MARSHALL, C. J., said : "Forced and violent inferences he does not admit; but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw, the court ought to draw." *Pawling* v. *The United States*, 4 Cranch, 219. In a note to 2 Tidd's Pr. 865, this passage is quoted : "The court will also, on the argument of the demurrer, make every inference of fact in favour of the party * * * which the jury might with the least degree of propriety have inferred; but they ought not to make forced inferences." 1 Trou. & Haley's Pr. 509.

Third. In considering the evidence demurred to, the courts will not weigh it to determine whether a fact, of which there is any evidence, has or has not been proved, nor will they consider such evidence as is favorable to the demurring party, if there be any opposing evidence. In the book referred to, it is said: "So, if the evidence conflict, the party demurring must admit that of his adversary to be true so far as it conflicts with his own. So, if the plaintiff call several witnesses

to prove the same transaction, some of whom testify unfav-ourably to him and others in his favour, the defendant, by demurring to the evidence, admits that the latter have told the truth, and so the court must take it, though the jury would have believed the former." 2 Tidd Pr. 865. The ancient rule seems to have gone much farther than the modern. It is said in Buller's Nisi Prius, that " If the plaintiff or defendant give in evidence matter of record, or writings, or parol evidence on which a doubt in law arises, the other side may demur to the evidence ; otherwise if there be a doubt whether the fact be well proved, for the jury may find it on their own knowl-edge."

We are satisfied that the evidence does not make out a case under either the second or third paragraphs of the complaint. We find no difficulty at all in holding that the evidence is wholly insufficient under either of the paragraph named ; the only difficult questions are such as arise under the first para-graph. A clearer view can be presented, and brevity attained, by disposing of the case viewed with reference to the last two paragraphs of the complaint.

A custom can not be inferred from a single act. It would be a strained and violent inference which would lead to the conclusion from one act alone, that a custom existed. The only evidence in support of the custom alleged in the second par-agraph is, that at the time the policy was written, the fees of Dr. Willcuts and those of another physician, which had been transferred to him, were accepted in part payment of the first premium. A single transaction, occurring at the very thres-hold of the dealings between parties who have put their con-tract in writing, can not be deemed proof of a custom. The single instance proved does not in any degree tend to warrant the inference that the appellee agreed to employ Dr. Willcuts permanently, and allow him to pay the premiums in services. The mere fact that he was allowed to make use of his own claim of three dollars, and that of his assignor for a like sum in payment, does not authorize the intendment, as against the

express words of the contract, that he was to pay all future premiums in that way. It would be a most violent and unnatural process which would lead to any such conclusion.

The written contract of the parties, in very explicit terms, makes the payment of all premiums at the designated times a condition precedent to the right to the insurance. It is expressly provided that in case default is made after the payment of three or more annual premiums, a paid-up or nonparticipating policy will be issued for an amount calculated in accordance with the tables used by the company. It is also stipulated: "If the said premium shall not be paid on or before the days above mentioned for the payment thereof, then, and in every such case, this policy shall cease and determine, and no premium on this policy shall be considered paid unless a receipt shall be given therefor, signed by the president and secretary, and the payment and receipt of any premium less than a full annual shall not have the effect to continue this policy in force longer than three months in case of a quarterly payment, or six months in case of a semi-annual payment." It is further provided that a consideration of the contract is the payment in cash of the semi-annual premium of eleven and twenty-four hundredths dollars before noon on or before the 27th day of February and August in each year. If it were conceded that the evidence warrants the inference that the sum of three dollars due the insured for services as medical examiner was accepted in payment, it would not entitle the beneficiary to recover a proportionate share of the insurance. The rights of the parties are fixed and defined by the written contract, and unless there is a new contract made modifying or abrogating the original, it must control. We know of no case applying to such a policy of insurance as that under consideration the rule that where services are performed under an express contract, their reasonable value can be recovered under a *quantum valebat*, although there is not a full performance. The case of *Manhattan L. Ins. Co.*

v. *Hoelzle,* decided by the Supreme Court of the United States, does not give us any light. We are unable to ascertain what the provisions of the policy were, or upon what point or points, the judgment was affirmed. All that we can learn from the case as reported in the only book now accessible, 8 *Insurance Law Journal,* 226, is that the court was evenly divided, it then being composed of eight judges. No opinion was delivered and we are unable to learn upon what point or points the court decided. It is certainly very doubtful whether the rule stated can be applied to any contract of insurance; but, however this may be, we do not think it can be applied to the one in hand. The references already made to it show very clearly that the parties made the payment of all the premium at the times designated, a condition precedent to the right to any part of the insurance. The contract goes further, for it provides that where there is a failure to pay the premium the policy shall "cease, determine," except in cases where at least three annual payments have been made, and that in such a case a non-forfeitable or paid-up policy shall issue. It can not be doubted that the contract, in most explicit terms, makes the right to the insurance an indivisible one. Not only is it provided that the failure to pay the premium shall forfeit the policy, but an express provision is made for the case of a failure after stated premiums have been paid. There can be no implied condition or covenant where there is an express one. Courts can not thrust into a contract provisions excluded by the parties, nor displace those they have written in it. To do this, would be to make, not enforce, contracts.

If there had been a new and distinct contract, abrogating or modifying the old, it would be different. We do not doubt that a contract may be modified, or even abrogated, by parol; but there is not a spark of evidence tending to show that this contract was so modified as to entitle the beneficiary to a proportionate part of the insurance upon the payment of a part of the premium.

Counsel contend that, as the company is a mutual one, the rule applicable to companies of a different character should not apply. We are unable to perceive any reason upon which this position can rest. The policy holder makes a contract with a corporation, and that contract must govern, although he is not a stranger in the literal sense, but a member of the corporate body. The corporation is as to him, as it is to all natural persons, a different and distinct person; and the contract has, so far as concerns the question under immediate discussion, precisely the same force and effect as though made with an entire stranger. All of the stockholders are interested, it is true, but their interests are not of such a nature as to require courts to give their contracts of insurance a different force and effect from others of a similar character. In all contracts of insurance, whether executed by mutual insurance companies or not, there are two parties with adverse interests, and the measure of their rights is supplied by their contract. Its terms can not be changed, nor its stipulations made nugatory, because the insured is a stockholder and entitled to share in the profits arising from the business of the company. There is no principle upon which the doctrine for which appellant contends can be placed, and it certainly finds no recognition from the adjudged cases. The stipulations of a written contract are not the less binding because made between a corporation and one of its members; nor are the rules of construction in such cases different from those which obtain in contracts between corporations and strangers.

We come now to the questions which arise when the case is viewed under the first paragraph of the complaint.

It is now proper to refer to other stipulations of the policy than those already examined. Endorsed on the policy, in a conspicuous place, is this: "Agents having the receipts, and then only, will receive the premiums when due or before; but agents are not authorized to waive forfeitures, to make, alter or discharge contracts; and no receipt will be binding on the company, unless signed by one of its officers, and countersigned

by the agent. No agent has authority, in any case, to waive or postpone payment of premiums, and the assured is hereby notified that the only evidence to him of the authority of an agent to receive any premiums on account of this policy is a receipt in printed form, signed by the president or secretary of the company." Strong as these stipulations are, it was competent for the insurance company to waive them. An insurer may waive, even by implication, the performance of conditions written in the policy. Wood Ins. 176, 832; May Ins., sections 360, 363. Cases cited by the author last referred to show that this principle has been applied to policies containing provisions quite as full and strong as those written in that declared upon in this case. The general rule has been repeatedly recognized and enforced by this court. *Behler* v. *The German, etc., Ins. Co.*, 68 Ind. 347; *The United States, etc., Co.* v. *The President, etc., Co.*, 42 Ind. 588; *The Kentucky, etc., Co.* v. *Jenks*, 5 Ind. 96.

The doctrine of waiver is liberally administered where the thing claimed to have been waived is not of a very material character. Whether the company in the present instance received money or medical services equal in value to the amount of the premium, was not material. Payment may be made in whatever thing of value the parties may agree to accept as payment. *Louden* v. *Birt*, 4 Ind. 566. Whether payment was made, or was to be made, in medical services or in money, was not the material matter. The essential thing was not the medium of payment, but the value of the thing given or done as payment. We have before us, therefore, a case where the doctrine of waiver should be liberally applied in order to avert a forfeiture.

It is settled that a waiver of a condition of a policy can only be made by an agent possessing competent authority. *Franklin Life Ins. Co.* v. *Sefton*, 53 Ind. 380. We think the case cited must be regarded as declaring that a mere local agent of an insurance company can not waive any of the material conditions written in the policy.

The questions which next present themselves are these: First. Was there a waiver of the condition that the premium shall be paid in money? Second. If there was such a waiver, was it made by an agent having authority to act for the corporation? Of these, in their order:

First. Lenfestey was appellee's local agent at Marion, in this State; Dr. Willcuts, the insured, was the medical examiner, and paid the first premium in the manner heretofore described. Before the second became due, he had earned three dollars as medical examiner. Lenfestey, in his testimony, said, in speaking of this matter: "On the day it fell due, I asked him to pay the premium on the policy; don't remember of any particular claim being spoken of at the time; something was said about the premium; that the difference between the amount due him and the amount due on the policy was $8.39." This witness also said, that he told Dr. Willcuts he would write to the general district agent on the subject; that he did write, and received an answer, which, omitting formal parts and signatures, reads as follows: "I did not pay Dr. Willcuts for the examination of S. P. Eversale, as he wanted the examination to apply on his premium." Taking all the evidence into consideration, and applying the rule that all reasonable intendments must be made in favor of the party whose evidence is demurred to, it must be held that there was a waiver of money payment to the extent of three dollars. It is true that there are some portions of the evidence which are in appellee's favor, and tend strongly to show that there was no waiver, but the course pursued precludes us from weighing the evidence, and, indeed, from doing anything more than considering that which is favorable to the appellant.

Second. We are constrained to the opinion that the second of the questions stated must be answered against the appellee. It appears from the evidence that the appellee is a foreign insurance company; that H. C. Martin was its agent for the northern district of Indiana; that within the territory assigned he was its principal agent, and that he had no superior officer

or agent in this State.   Under the rule declared in the recent case of *Phœnix, etc., Ins. Co.* v. *Hinesley,* 75 Ind. 1, Martin must be regarded as representing the corporation in this State, and as clothed with authority broad enough to waive the performance of such a condition as that relied upon to defeat the appellant.   The waiver was really of a non-essential matter, for whether money was actually paid, or its equivalent in value yielded to the corporation, was not of controlling importance. If the agent had taken a certificate of deposit or a draft, we suppose no serious question would have been made, and we can not perceive that the principle is different because he contracted to take what was really equivalent to money, although in the form of professional services.   Under the rule applicable where a demurrer to the evidence is interposed, it must be inferred that Martin authorized the application of the sum due Dr. Willcuts to the payment of the August premium, and that his act was obligatory on the corporation which he represented.

Assuming, as we must, that there was a waiver; that it was made by the authorized agent of the company; that the three dollars due the insured for the examination of the applicant, Eversale, was a payment on the August premium, what are the rights of the insurer and beneficiary?   The question which faces us is not free from difficulty.   The sum due Dr. Willcuts did not pay the premium, and there is no evidence from which it can be inferred that he paid, or offered to pay, the remainder of the premium.   By stretching the rule that intendments are all against, and strongly against, one who demurs to his adversary's evidence, to its utmost tension, it may be inferred that the insured understood and intended that the sum should be applied to the payment of the premium, and that the company's agent joined him in this; but the rule can not be extended far enough to allow the inference that there was payment, or offer of payment, of anything more.

Appellant's counsel offer two theories in support of their contention that the evidence justified a recovery, although no

payment, or offer of payment, of the amount of the premium in excess of the value of the services was made. The first of these is, if we understand counsel aright, that the company was bound to apply the sum due the insured to the premium, that this was a payment *pro tanto,* and entitled the beneficiary to a proportionate share of the insurance. We have already expressed our opinion that the right to the insurance is not a divisible one, and that the payment of the whole premium was a condition precedent to a right to recover any part of it. But if we are wrong in this, still there can not under the evidence, unless resort is had to violent and unnatural inferences, be any conclusion that either the corporation or the insured meant that all the premium should be so paid. The utmost that can be claimed with any tincture of reason is, that the value of the services should be credited, and the remainder paid in cash. The case of *The Girard L. Ins., etc., Co.* v. *Mutual, etc., Ins. Co.,* decided by the Supreme Court of Pennsylvania, and reported in 9 Weekly Notes of Cases, 425, decides that, where the company has in its hands as dividends due the insured a sum in excess or equal to the premium, it is bound to apply it to the payment of the premium, and can not in such a case declare the policy forfeited. In that case it was said: " Was it conscionable for the defendant company to forfeit this policy when it had in its hands more than enough of the assured's money to pay the quarterly premium due on the 14th of January ? " It is obvious that the case cited, even if the doctrine it asserts be unqualifiedly accepted, does not' meet the question here confronting us. The principle of that case fully applied would do no more than entitle the beneficiary to treat the sum due the insured for services as a payment in part of the premium, leaving unpaid the greater part.

We unhesitatingly assent to the proposition that where parties have, by their own acts, placed a construction upon a contract, the courts will adopt and enforce the contract as thus construed. *Reissner* v. *Oxley,* 80 Ind. 580 ; *Johnson* v. *Gibson,* 78 Ind. 282 ; *Aimen* v. *Hardin,* 60 Ind. 119 ; *Insurance*

*Co.* v. *Dutcher*, 95 U. S. 269.   But granting the rule, and giving it the utmost force possible, it only brings us back again to the original difficulty; it does not enable us to surmount it.   The construction given the contract, allotting to the evidence the effect most favorable to the appellant, is, that the services were to be credited and the remainder of the premium was to be paid in money.   So the rule does not enable us to make one step of progress.

The second of the theories, by which appellant seeks to escape the difficulty caused by the failure to pay or tender the amount of the premium in excess of the value of the services of Dr. Willcuts, is, that the act of the company excused performance.

The law unquestionably is, that, if performance is prevented by the act of one of two contracting parties, the other is excused from tendering performance.   So, too, if one party avows an intention not to perform, it will, in most cases, excuse the other from offering to perform his part of the contract.   *Ruble* v. *Massey*, 2 Ind. 636 ; *Turner* v. *Parry*, 27 Ind. 163 ; *Phœnix, etc., Ins. Co.* v. *Hinesley, supra.*   An insurance company, by demanding more than it is entitled to receive, and notifying the insured that nothing but a compliance with the demand will be deemed performance, will excuse the latter from tendering the premium.   May Insurance, 2d ed., section 358. To state the general rule is easy enough ; but to always properly apply it, is a perplexing and difficult task.

The single fact which appellant relies on to show that performance on the part of the insured was excused is, that on the first day of July, 1878, a notice was issued by the company, and a week or two after its issue served on Dr. Willcuts.   The notice, omitting heading and signature, is as follows: "The second S. A. premium of $11.39, on your policy No. 95,594, falls due at the office of the company in Marion, Indiana, before noon on the 27th day of August, 1878.   The conditions of your policy are that payment must be made on or before the day the premium is due, and members neglect-

ing so to pay are carrying their own risk. Members should not assume that it is just as well to pay at any time during the month. Agents have no right to waive forfeitures, or to restore lapsed policies. Upon a receipt of a proper certificate of good health, in accordance with its rules, and within one year from date of lapse, the company will restore lapsed policies. Please present this notice at time of payment. Prompt payment is necessary to keep your policy in force." We are unable to assign to this notice the force claimed for it by the learned counsel for appellant. Liberal as is the rule to be applied in favor of their client, it will not justify the inference that the company would refuse to make the proper credit and receive nothing less that the whole amount of the premium in money. The notice is nothing more than the usual one informing the insured of the time his semi-annual premium is due, and calling attention to the conditions of the policy. By no possible intendment, within the bounds of reason, can it be construed as meaning that payment must be made in money, and that no credit for services will be allowed. Broad as is the rule which here comes to the assistance of the appellant, it will not justify the inference that the company either meant to, or did, notify the insured that his claim for services would not be allowed in part payment. We can not agree with counsel, that the company repudiated any agreement with Dr. Willcuts. Conceding the claim of appellant that the latter was entitled to a credit on the premium for services rendered, yet it is clear that this credit was not to be made until the payment of the premium, and then to be taken *pro tanto* in payment. There is no evidence justifying any inference under the most liberal rule conceivable, that a credit was to be entered as the services were rendered. The utmost that can be said is, that there was an agreement, that when the premium became due it might be paid partly in services and partly in money.

The case of *Phœnix, etc., Ins. Co.* v. *Hinesley, supra,* is essentially unlike the present upon the point under immediate dis-

cussion.   There the contract required the payment of interest
on premiums, at the rate of six per cent., the company de-
manded seven per cent., and it was held that this was notice
to the insured that the company would not receive payment
at the contract rate, and excused performance.   It was said
by HOWK, C. J., by whom the opinion of the court was de-
livered: "If, as alleged, the appellant wrongfully, and in vio-
lation of its agreement with the appellee, demanded of her that
she should pay the interest on the outstanding notes at the
rate of seven per cent., when six per cent. only was payable
thereon, and notified her that six per cent. interest would not
be received, if tendered, and that no other or succeeding pre-
miums would be received on said policy unless the rate of seven
per cent. was paid on said notes, it is very clear, we think,
that the appellee was thereby and thereafter excused from the
performance of her part of her agreement with the appellant."
The notice in the present case does not call upon the insured
to do anything more than his contract required him to do.
It notified him that he was expected to pay according to the
agreement; it apprised him of the time of payment, directed
attention to the conditions of the contract, and warned him
of the consequences of non-performance.

The solitary fact favorable to the appellant, if it can be
said to be favorable, is this notice.   The testimony of Len-
festey, the local agent, indicates very strongly that the insured
desired not to apply on the premium the three dollars due
him for services, but desired that it should be paid to him.
We quote from the testimony of this witness: "In the con-
versation I had with him" (the insured), "he said there was
three dollars due him, and asked who was to pay it; don't
think he said what he wanted to do with it; I told him I
would write to Dr. Martin about it; I don't call to mind
which of us said there was $8.39 after the payment of the
$3; it was prior to that he asked who would pay the $3."
This conversation took place three or four weeks before the
time the premium became due.   Whether this testimony does,

·or does not, show that there was an agreement to permit Dr. Willcuts to pay premiums in professional services is not, at this point, the enquiry. The question here is: Does it tend in any degree to prove that the company either repudiated the agreement, or refused to permit the proper credit to be given? It certainly does not tend to prove anything that excused the insured from tendering performance of his part of the agreement.

The judgment must be affirmed.