## ARGUED AND DETERMINED IN THE

# SUPREME COURT

### OF THE

## STATE OF WISCONSIN,

### AT THE DECEMBER TERM, A. D. 1853.

---

### MATTHIAS B. CHILTON, *Appellant*,

### *vs.*

### JOSEPH WILLFORD and wife and others, *Appellees.*

APPEAL IN EQUITY FROM GREEN COUNTY CIRCUIT COURT.

Where A. gives to B. a letter of attorney, authorizing him "to collect the debt due, arising from certain notes secured by mortgage," and "to compromise, settle and arrange them, either in law or otherwise, as to said attorney should seem fit," the attorney is not authorized to forgive the debt, or to postpone or discharge the security, except in the fulfilment of some arrangement for its satisfaction.

The authority to compromise the debt does not authorize the attorney to enter into any speculation by which the value of the security may, perchance, be enhanced. Nor does it authorize the discharge of the security, but upon the receipt of the debt, or such an amount, as, upon compromise, might be taken in satisfaction thereof.

Letters of attorney, delegating power or authority to another, should be so construed as to further the object and interest of the principal, as the same are made to appear from the whole instrument, although general words may be used in conferring the power.

The appellant in this cause filed a bill in the Circuit Court of Green County, to foreclose a mortgage, executed by the appellees, Joseph Willford and wife, which mortgage was given to secure payment of four promissory notes, amounting in all to the sum of $4000, bearing interest at twelve per cent. The mortgage was dated June 14, 1847, and the whole sum, by the terms of the notes and mortgage, was to be paid by the first day of June, 1851.

The bill sets forth the mortgage in question, and the substance of a letter of attorney executed by M. B. Chilton to M. Chilton, under his hand and seal, which letter is substantially stated in the opinion of the court. It also sets forth that soon after the delivery of said letter of attorney, the said M. B. Chilton went to California, where he remained about three years. That during his absence and without his knowledge or consent, his said attorney, assuming to act for him under said letter of attorney, became a party to an indenture of mortgage which is set forth as follows : That said last mentioned mortgage was of three parts, to-wit : The said Joseph Willford and wife, party of the first part ; the said M. B. Chilton, by his attorney in fact, Matthias Chilton, party of the second part ; and Moulton & Fish, party of the third part. By virtue of which mortgage the said Willford and wife mortgaged to Moulton & Fish the premises first mortgaged to M. B. Chilton, to secure the payment of five hundred dollars for goods sold and to be delivered to the said Willford by the party of the third part. That the said M. Chilton, assuming to act as said attorney of M. B. Chilton, and in his name as party of the second part in the mortgage above mentioned, did release, acquit and discharge the property

and premises above mortgaged, from the force and effect of a certain mortgage executed by the said Willford to the said M. B. Chilton to secure the payment of four thousand dollars due from Willford to Chilton, on the purchase of certain property. Also that the said M. Chilton covenanted and agreed that this lien of Moulton & Fish shall be paramount to, and take precedence of, the lien of the four thousand dollar mortgage. This mortgage was dated December 10, 1850.

The complainant set forth another mortgage between the same parties, for the same amount, and precisely in the same form as that last mentioned. And that he never, in any way or manner, assented to, confirmed or ratified the aforesaid acts of said M. Chilton, but that he repudiated all and singular his acts in the premises.

It is further set forth that said Moulton & Fish filed their bills to foreclose their said mortgages, in which the said Willford and wife and M. B. Chilton were made parties defendants, but that the said Chilton was never served with any process whatever, neither had he any notice of said suit until some time after said premises had been sold and the sales confirmed.

The complainant prayed the usual decree for a sale, and that the sale by Moulton & Fish might be decreed ineffectual. The defendants all appeared and demurred; the demurrers were argued at the March term of the Circuit Court of Green County, 1853. The court sustained the demurrers for want of equity, and from this order the complainant appealed to this court. After the appeal was taken, and on the 14th day of March, 1853, the complainant assigned the

notes and mortgage to John B. Chilton, and thereafter, on the 17th March, 1853, the said M. B. Chilton died intestate. On the 26th May afterwards, John B. Chilton filed a bill of revivor and supplement, praying that said suit might be revived, and that he might have the benefit of the proceedings had in said cause, up to the time of the death of the said M. B. Chilton.

*Jas. H. Knowlton*, for appellant, insisted that the power conferred was of a particular nature, and limited to specific objects; that it authorized the attorney to *collect* the debt, but not to *discharge* it without payment; that the release from the lien of M. B. Chilton did not discharge Willford from his former debt.

Letters of attorney delegating power or authority to another, must be strictly construed so as to effectuate the interest of the principal, although general words are used. *Story on Agency*, 2 *Camp. R.* 43; 4 *Barn. & Ald.*, 210; *Paley on Agency*, 7 *M. & W.* 595; 1 *Peters' R.* 264; 8 *Wendell*, 497; 5 *Bing.*, 443; 3 *Hill* 279.

*J. A. Sleeper*, for the appellees.

*By the Court*, SMITH, J. The material matter to be determined in this case, as it now stands, is the proper construction to be given to the letter of attorney of the 5th day of May, 1849, executed by Matthias B. Chilton to Matthias Chilton, and the extent of the power and authority conferred by that instrument, in its relation to the tri-partite agreement subsequently made by and between the said Joseph

Willford and wife of the first part, the said Matthias B. Chilton, by his attorney, Matthias Chilton, of the second part, and Moulton & Fish of the third part.

The letter of attorney referred to authorizes the said Matthias Chilton, thereby constituted attorney for the said Matthias B. Chilton, "for him and in his name to ask, demand and sue for, recover and receive all sum or sums of money, debts, goods, wares, and other demands whatsoever, which were or might be due, owing, payable and belonging to him, M. B. Chilton, by any manner of means whatsoever; also as his attorney, for him and in his name to lease, let, and demise any lands belonging to him, M. B. Chilton, by any manner of means whatsoever; also, as his attorney, for him and in his name to lease, let and demise any lands belonging to him in the counties of Dane, Green and La Fayette, and State of Wisconsin, to such person or persons, and for such a term of time, or number of years, and at and under such yearly and other rents, as said attorney should think fit, or otherwise to sell, grant and convey the same absolutely in fee simple for such price or sums of money, to such person or persons as he should think fit and convenient. And especially to collect the debt due arising from certain notes, secured by a mortgage upon lands lying in the county of Green, and State of Wisconsin, to compromise and settle and arrange them either in law or otherwise, as to said attorney should seem most fit. Giving and granting to said attorney full power and authority in and about the premises, to have, use and take all lawful ways and means in his (M. B. C.'s) name, for the purposes aforesaid; and upon the receipt of any such debts, dues, or sums of money, acquittances and other

sufficient discharges, for the said M. B. Chilton, and in his name to make and give."

All of the power given or exercised by the said Matthias Chilton in behalf or name of Matthias B. is derived from the letter of attorney above described, and the simple question is, whether or not he was authorized by that agreement to make the tri-partite agreement set forth in the bill of complaint.

The contract last named was entered into by the parties to it, with the letter of attorney before them ; all were fully advised of its extent and power, and under and by virtue of it only did the attorney of the complainant assume to act.

The power granted to Matthias Chilton by the letter of attorney, in relation to the mortgage debt in question, was, " to collect the debt due, arising from the certain notes secured by the mortgage," &c., "to compromise and settle and arrange *them* either in law or otherwise, as to said attorney should seem fit." The subject of the power was the debt evidenced by the notes and secured by the mortgage. The object was to collect the debt thus evidenced and secured, and to compromise, settle and arrange the notes, either in law, that is, by legal proceedings, or otherwise, that is, by making such compromise as might be consistent with the object of the power. The attorney was not authorized to give the notes away, to forgive the debt, or to discharge the security, except upon the collection of the debt, or in the fulfilment of some arrangement for its satisfaction.

The word " compromise " is the only one which, by any possibility, can seem to cover the tri-partite agreement. The term is sufficiently definite in its meaning, and implies either a mutual submissson of matter in

dispute to arbitrators or judges chosen by the parties, or an adjustment of such matters in dispute by the parties, by mutual concessions. 1 *Bouv. Law Dic.*; 1 *Burrill's Law Dic., Title, Compromise.*

But here was no matter in dispute out of which sprang the tripartite contract; it does not seem to have been intended, or to have been adapted in its nature to promote or facilitate the object of the power, viz: the collection of the debt. The language of that agreement is, "in consideration of the advantage, he (the said Chilton,) expects to derive from the said party of the third part selling and delivering to the said Willford, the goods mentioned in said agreement with said Willford, above referred to, hereby releases, acquits and discharges the property and premises above described, from the force and effect of a certain mortgage," &c., meaning the mortgage given to secure the debt.

We cannot perceive how this agreement could in any way promote the object of the power of attorney, and we do not think the acts of the attorney were within the letter or scope of the power, and hence are of the opinion that the principal, Matthias B. Chilton, was not bound by that agreement. The attorney was authorized "*upon the receipt* of any such debts, dues, or sums of money, acquittances and other sufficient discharges, for the said Matthias B. Chilton, in his name to make and give." This power to acquit and discharge authorizes the attorney to do so, only upon receipt of the money or satisfaction of the debts. It does not authorize him to enter into any speculation by which the value of the security may perchance be enhanced. It does not authorize the discharge of the mortgage but upon the receipt of the

debt or such amount as upon compromise might be taken in satisfaction thereof. No authority is expressly given by which the attorney could postpone the mortgage of his principal to that of another. Any such authority should be expressly given, or, if exercised, should clearly appear to have been done in furtherance, or execution of, the express object of the power.

It is claimed by the counsel for the appellees that the appearance of Mr. Knowlton for and on behalf of this complainant, Matthias B. Chilton, in the court below, and the putting in an answer for him in the foreclosure suit instituted by Moulton & Fish upon the mortgage of Willford and wife to them, operates as a bar to any further proceedings on the part of the complainant; that he has had his day in court, and is bound by the decree in that suit.

The bill, however, does not in terms show such appearance. The complainant, it is true, sets out the fact of the foreclosure suit of Moulton & Fish, and the decree, and refers to the record of the proceedings therein still remaining in that court. But he distinctly avers that he was never served with process; that there never was publication of notice, as authorized by statute; that he never appeared therein, or authorized any one to appear for him.

It is said, however, that the record of the proceedings in that suit show an appearance on the part of the complainant by Mr. Knowlton, his present counsel in this case, and that as he has made reference to that record, this court should look into it, to discover the fact, and should now pass upon its legal consequences. But we think not. The complainant has not made the record in that suit a part of his bill, and the court below, much less this court, was bound

to search those records to ascertain a fact not made part of the record in the suit.

It may become an interesting question in this suit, how far a party is bound by the unauthorized appearance of an attorney, solicitor or counsellor, regularly admitted to practice in our courts, or what allegations or acts may be necessary on the part of the party, to escape the binding operation of such appearance. But these questions are not here presented by the pleadings, and we give no opinion upon them.

It was also stated on the argument that the amended bill in this case was filed without leave, and after a copy had been taken by the defendant from the clerk without compliance with the rule, and our opinion is asked in relation to the matter. Rule 23, in Equity, is so simple and easy of comprehension, that a reference to it merely is deemed a sufficient reply. In this case, however, there is an order of the court below requiring the bill and amended bill to be engrossed, &c., which probably has not been complied with, merely for the reason that this appeal was taken and the papers transmitted here so soon after it was made.

Our views of the proper construction to be given to the letter of attorney set forth in the bill of complaint being such as we have expressed, the equity of the bill becomes apparent, and without attempting to define that equity, or further to adjudicate upon the merits of the case in its present condition, we think the decretal order of the Circuit Court, in sustaining the demurrers, was erroneous, and that the same ought to be reversed.

The decree of the Circuit Court, sustaining the demurrers for want of equity, is reversed, and those demurrers are overruled.