## TURNER *v.* PARRY.

NEGROES.—WITNESS.—*Quære :* Whether a negro or mulatto who has come into this State in violation of the thirteenth article of the constitution is a competent witness, under the act of *December* 20, 1865, in a case where a white person is a party.

TENDER.—Where one bound by contract to convey real estate denies the contract, and refuses to perform it, a tender of the price by the purchaser is not necessary.

APPEAL from the *Wayne* Circuit Court.

GREGORY, J.—This was a suit by the appellee against the appellant, for the specific performance of a contract for the conveyance of a lot in *Richmond*.

The contract was one by which *Parry* had the privilege of purchasing the lot at $1,500, within a year from *October*

1, 1864. By the same contract, *Parry* became the lessee of the lot for one year.

It was alleged in the complaint, that in *August*, 1865, the plaintiff notified the defendant of his election to make the purchase; that on the 15th of *September*, of the same year, he made a tender of the purchase money and demanded a conveyance, which was refused, and that a tender was again made in *December* following, and a conveyance again demanded, which was refused; that the plaintiff has ever since been ready, &c.; that relying upon the performance, by the defendant, of his contract, the plaintiff made improvements on the lot of the value of $1,500. The general denial was filed. The issue was tried by the court and found for the plaintiff, and a decree thereupon rendered for the plaintiff.

The error assigned is upon the overruling of a motion for a new trial. Various questions are necessary to be determined in order to reach a conclusion as to the correctness of the action of the court on the motion.

A mulatto who had come into the State in defiance of the thirteenth article of the State constitution was offered by the defendant as a witness, and his evidence was excluded, the plaintiff being a white man, and the defendant a mulatto. The trial was had in *August*, 1866.

By the act of *February* 14, 1853, (Acts 1853, p. 60,) the witness would have been incompetent. By the act of *December* 20, 1865, (Acts Spec. Ses. 1865, p. 162,) color as a test of the competency of a witness was removed, "provided that no negro or mulatto who has come, or who shall hereafter come, into this State, in violation of the thirteenth article of the constitution of the State shall, while said article continues in force, be competent to testify as a witness in any case in which a white person shall be a party in interest."

By the act of Congress of the 9th of *April*, 1866, it is provided, "that all persons born in the *United States*, and not subject to any foreign power, excluding *Indians* not

taxed, are hereby declared to be citizens of the *United States;* and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall have the same right in every state and territory in the *United States* to make and enforce contracts, to sue, be parties, and give evidence," &c., " any law, statute, ordinance, regulation or custom to the contrary notwithstanding." Acts 1st Ses. 39th Cong., § 1, p. 30.

In *Smith* v. *Moody et al.*, 26 Ind. 299, this court held that the thirteenth article of the constitution was void, being in conflict with the second section of article four of the Constitution of the *United States.*

It is urged that the legislature recognized the validity of this article in the proviso above set forth, and contemplated some action to declare it void, before the disability of color would be removed, as to persons coming into this State in violation of its provisions. If this were so, then Congress, in the opinion of the writer, by the statute above cited, has taken that action. But I think that the article being void, the proviso, by its terms, fails. One cannot violate that which never had a legal existence. But as this point is not material, a majority of the court decline to decide it.

The evidence is in the record. On the 19th of *September,* 1864, at the city of *Richmond,* in this State, *Turner* and *Parry* entered into the written contract set out in the complaint. The contract was drawn by one *Bell,* a real estate agent, who was at the time employed by *Turner* to act as his agent in renting and selling other property in the city. Immediately after making the contract, *Turner* left this State and returned to *Kansas,* where he resided at the time, and did not again come into this State until *December,* 1865. *Parry* introduced testimony at the trial tending to show that it was understood at the time the contract was made

that *Bell* was to act as *Turner's* agent, in his absence, and if he, *Parry*, concluded to buy the lot, he was to notify *Bell* and pay him the money. *Turner* introduced evidence tending to disprove this, and offered the rejected witness to sustain his side of this question. In *April*, 1865, *Parry* made permanent improvements on the lot in controversy, to the value of $1,200. In *July*, 1865, he notified *Bell* of his election to purchase the lot, and in *August* he again notified him to the same effect. On the 14th of *September*, 1865, *Bell* wrote a letter to *Turner*, in which he notified him that *Parry* had concluded to take the lot and wanted a deed. To this *Turner* replied, that he would not make the deed, as he had determined not to sell the lot, but to keep and improve it himself. After the receipt of this answer, on the 26th of *September*, 1865, *Parry* made a formal tender to *Bell* of the $1,500, and demanded a deed. *Bell* notified *Turner*, the same day, of the tender and demand, to which *Turner* made no answer. *Parry* then wrote directly to *Turner* to inquire the reason why he did not make the deed according to contract, to which *Turner* replied by letter, dated *November* 21, 1865, denying that he had ever made any such contract, and stating that he had only agreed to let *Parry* have the lot in case he concluded to sell, which he had not yet done. A short time after writing this letter, *Turner* came to *Richmond*, and *Parry*, immediately on his arrival, met him, tendered him $1,500, with interest from *October* 1st, and demanded a deed. *Turner* refused to accept the money or to make the deed, not on the ground that the tender was too late, but solely on the ground expressed in his letter of *November* 21st.

We think the conduct of *Turner* in refusing performance, and in denying the contract, made the question of tender to *Bell* immaterial, and that if the court below committed an error in rejecting the witness offered, that error was harmless. When a party to an agreement gives notice to the other of his determination not to perform the contract on his part, performance by the party receiving such notice

is unnecessary. *North's Adm'r* v. ·*Pepper* 21 Wend. 636; *Skinner* v. *Tinker,* 34 Barb. 333; *Crary* v. *Smith,* 2 Comstock 60. This disposes of several other questions made by the appellant in relation to the tender to *Bell.*

The judgment is affirmed, with costs.

*J. P. Siddall,* for appellant.

*C. H. Burchenal,* for appellee.

The judgment is affirmed, with costs and ten per cent. damages.