## WOLF HOTEL COMPANY *v.* PARKER.

[No. 12,540. Filed October 14, 1927. Rehearing denied February 17, 1928. Transfer denied April 5, 1928.]

**336**

*Osborne, Osborne & Link* and *Walter R. Arnold,* for appellant.

*John G. Yeagley, Lemuel Darrow, Earl Rowley* and *C. J. Shields,* for appellee.

McMAHAN, J.—Action by appellee for damages to certain wearing apparel which was damaged by reason of water backing up into the basement of appellant's hotel. On and for a long time prior to July 3, 1923, appellee and her husband were guests for hire in the hotel which was owned and operated by appellant. Appellee had a quantity of wearing apparel in her trunks which appellant stored in a room in the basement of the hotel. On the evening of July 3, 1923, there was a heavy rainfall, which caused the water from the streets and alleys in the vicinity of the hotel to back up into the basement of the hotel and into the room where the trunks were stored, thus damaging appellee's clothing, for which she recovered a judgment, and from which this appeal is prosecuted.

The complaint alleges that the street sewer with which the sewer and drain of the hotel is connected, as appellant for several years well knew, was not of sufficient capacity to carry off the storm water, but caused the basement of the hotel and the room where the trunks were stored to be flooded when there was a heavy rain; that appellant took no steps to have traps and valves or shutoffs installed to prevent the water from flooding the basement, when it could have prevented the same by using traps, shutoffs and devices then in common use in the city of Laporte, where the hotel was located.

The complaint also contains a general charge of negligence on the part of appellant, whereby it is charged that, for a long time prior to July 3, 1923, the hotel basement frequently became flooded with water from the sewer, which was well known to appellant; that, with such knowledge, it negligently and carelessly placed appellee's trunks on the floor of the basement; that on July 3, 1923, as the result of a heavy rainfall, the water from the sewer backed into the basement and caused appellee's trunks and the contents thereof to be damaged.

The cause was tried on the issues presented by the complaint and an answer in two paragraphs, one a general denial and one alleging a compromise and settlement. Appellant contends the court erred in overruling its motion for a new trial, the specifications of which are: (1) The verdict is contrary to law; (2) the giving of certain instructions; (3) the refusal to give certain instructions; and (4) excluding certain evidence.

Appellant says its contentions on the trial were: (1) That the flood was an act of God, against which it with reasonable precautions could not guard; (2) that at no time had water reached the trunk-room before, and that, after the last entry of water into the basement, appellant made alterations and provisions for the purpose of keeping the water from backing from the sewer into the basement, and constructed an overflow pipe, and had by all reasonable precautions anticipated storms reasonably to be expected; (3) that appellee and her husband had the free use of the trunk-room with no obligation on their part therefor, and therefore appellant was a gratuitous bailee, and appellant took all precautions after the room was flooded to prevent damage to appellee's goods, but she negligently failed to open the trunks or do anything whatever with them until July 5, 1923, and the damage was caused by reason of her keeping

the trunks locked during that time; and (4) that appellant had compromised and settled all matters with appellee by agreeing to pay whatever expense would be incurred in repairing the damage done. The jury, however, found against appellant on each of these contentions.

Appellee insists that no question is presented for decision because all of the evidence is not in the récord. Sections 688, 689 and 690 Burns 1926, being §§4, 5, and 6 of "An Act Concerning Proceedings in Civil Procedure," Acts 1903 p. 338, are as follows:

Section 688. "In an appeal in any civil action to the Supreme or Appellate Court from any judgment, decree or interlocutory order of a circuit or superior court, or of any judge of such court in vacation, it shall not be necessary for the bill of exceptions to contain all of the evidence given in the cause or proceeding, unless the decision of the court, or the verdict of the jury, shall be called in question as being contrary to law or not sustained by sufficient evidence."

Section 689. "In all other civil actions [appeals], for the purpose of presenting for decision any questions in respect to error alleged to have occurred upon the trial, the bill of exceptions shall be sufficient if it contains a clear statement of the ruling or matter called in question, together with a succinct recital of the substance of such part of the evidence and proceedings as shall be necessary to advise the Supreme Court or the Appellate Court, as the case may be, of the pertinency or materiality of the matters sought to be reviewed on the appeal."

Section 690. "Unless the bill of exceptions shall contain matter showing that the order, ruling, action, decision, or matter called in question was harmless to the party appealing, or that the error, if any, was cured or corrected by the trial court, the bill of exceptions prepared as herein provided shall be sufficient to bring the matter thereby presented before the court for review in

as ample form as though such bill of exceptions contained all of the evidence and all the proceedings upon the trial."

The bill of exceptions does not purport to set out all the evidence in the cause. It contains a recital of certain evidence. The certificate of the trial judge ▇ states that the evidence of the witnesses named in the bill of exceptions and the offers to prove and exceptions are truly and correctly set forth, and that the bill of exceptions contains all of the evidence given in the cause pertaining "to the physical condition, equipment, facilities, and surroundings with reference to sanitary and drainage arrangements of the premises at which the injury occurred, is complete, true and correct." There is included in the evidence set out in the bill of exceptions a partial recital of the testimony of John Wolf, who was the manager of the hotel, and of the testimony of John Bachman and William Moore, showing that objections were sustained to certain questions which were asked these witnesses, and that appellant excepted to the action of the court in refusing to allow the several witnesses to answer the questions. This is a substantial compliance with §689, *supra*, and is sufficient to present for decision the action of the court in refusing to allow the witnesses to answer the questions set out in the bill of exceptions, and also in giving and refusing to give certain instructions, such questions having been properly presented in the motion for a new trial. The act of 1903, of which §§688, 689 and 690 Burns 1926 are a part, is remedial in character and should be liberally construed. This statute expressly provides that "it shall not be necessary for the bill of exceptions to contain all the evidence given in the cause or proceeding, unless the decision of the court or the verdict of the jury shall be called in question as being contrary to law or not sustained by sufficient evidence." The object of the statute

was to simplify appellate procedure and to lighten the burdens of litigation. *Abney* v. *Indiana, etc., Traction Co.* (1908), 41 Ind. App. 53, 83 N. E. 387. Where questions are raised in the motion for a new trial requiring a consideration of particular parts only of the evidence, such parts alone are necessary in the bill of exceptions. *Atkinson* v. *Maris* (1907), 40 Ind. App. 718, 81 N. E. 745. If the decision of the court or the verdict of the jury is called in question as being contrary to law or not sustained by sufficient evidence or if the giving of an instruction directing a verdict is challenged, all of the evidence must be set out in the bill of exceptions. *Dillman* v. *Chicago, etc., R. Co.* (1909), 44 Ind. App. 665, 90 N. E. 22. Not only is this statute to be liberally construed, but where, under §690, *supra*, a bill of exceptions contains only a part of the evidence, and fails to show that the matter called in question was harmless, or that the error, if any, was cured or corrected by the trial court, there is no presumption that it was harmless or that it was not prejudicial, *Keely* v. *City of Indianapolis* (1910), 46 Ind. App. 182, 92 N. E. 177. *Abney* v. *Indiana, etc., Traction Co., supra.* Before the enactment of this statute, every presumption was in favor of the regularity of the proceedings in the trial court, but where an appellant shows by a bill of exceptions prepared in accordance with §689, *supra*, that substantial error was committed against him, he is entitled to a reversal, "unless the bill of exceptions shall contain matter showing that the order, ruling, action, decision, or matter called in question was harmless to the appealing party, or that the error, if any, was cured or corrected by the trial court." If the ruling or error complained of has been rendered harmless or has been cured, such fact must be shown by the bill of exceptions. The presumption in favor of the regularity of the actions of the trial court is not sufficient to overcome the error

disclosed by the bill of exceptions. The rule is otherwise, when the decision of the court or the verdict of the jury is challenged as being contrary to law or not sustained by sufficient evidence, or where the appeal has been taken on a reserved question of law. In such appeals, the presumption is in favor of the regularity of the rulings of the trial court, and it is incumbent on the appellant to present such a record as will overcome that presumption and clearly and affirmatively show that the rulings complained of were harmful to him. In such appeals, when the bill of exceptions sets out certain evidence, it will not be presumed, for the purpose of overthrowing the judgment, that there was no other evidence upon the subject. That must be made to appear by appropriate statements in the bill of exceptions. *Keller* v. *Reynolds* (1895), 12 Ind. App. 383, 40 N. E. 76; *Rapp* v. *Kester* (1890), 125 Ind. 79, 25 N. E. 141; *Kernodle* v. *Gibson* (1888), 114 Ind. 451, 17 N. E. 99; *Downs* v. *Opp, Admr.* (1882), 82 Ind. 166. But when the bill of exceptions is prepared in accordance with §689, *supra*, and sets out certain evidence, it will be presumed there was no other evidence upon the question unless the bill shows otherwise.

There is no contention that the verdict is not sustained by sufficient evidence, and no question is presented in so far as the first specification in the motion for a new trial is concerned. The rule that this court will not 'consider an assignment of error which requires the determination of the question of the sufficiency of the evidence to sustain a verdict or finding, or under which it is claimed the verdict or decision is contrary to law, unless all of the evidence given in the cause is brought before the court, is so well settled that we need cite no authorities supporting the rule. Section 688, *supra*, clearly recognizes this rule. This disposes of the contention that the verdict is contrary to law.

Appellant offered to prove by John Wolf, the manager of the hotel, that he was ready, able and willing to pay certain bills for washing and cleaning appellee's clothing. This was denied. In support of the contention that the exclusion of this testimony was error, appellant says that where a compromise and settlement is pleaded, and certain acts are to be done by the plaintiff, the defendant need only show that he is ready and willing to perform when the plaintiff performs.

Appellant, without pointing out any evidence to prove an agreement to compromise or settle the claim of appellee, assumes there was such an agreement. The only evidence which by any possible construction can be said to relate to a compromise and settlement is the testimony of John Wolf as to a conversation he had with Mrs. Parker two days after the storm, and a second conversation with her which he says was in August. The first conversation was had when he called at appellee's room in the hotel and was shown some of appellee's clothing that had gotten wet, and when he arranged to have appellee's trunks and clothing put in a room on the fifth floor of the hotel, and when, according to his testimony, he told her to open the trunks and take everything out to dry, and to send such things as needed cleaning to a cleaner, if the trunks needed fixing to send them to a certain place and, when she got it all done, and got her bills, to be sure and save them, as he wanted to see them, and that appellee said' "All right," and that the goods were then moved into the room, where they remained for about ten days. He next testified that in August he received a letter from appellee with the bills marked paid, that, after having the bills copied, he returned them in accordance with the directions in appellee's letter. He then related a conversation which he says he had with appellee soon thereafter, the testimony of the witness as to this conver-

sation being as follows: "Mrs. Parker was at the desk, I walked over and said, 'Good morning, Mrs. Parker, I see everything has been taken care of.' She says, 'Everything has been taken care of, and is packed and put away down in the store room.' I said, 'Yes, I am surprised at the smallness of the laundry bill.' 'Well,' she says, 'you see, Mr. Wolf, we washed a good many things in my room.' I says, 'Everything is all right?' She said, 'Everything is all right and we thank you.'" Following this, the witness was asked if he at all times had been "ready and willing to pay those bills."

The court did not err in sustaining the objection to this question. No inference of a compromise or settlement of appellee's claim for damages can be drawn from this testimony. A compromise has been defined as: "A settlement of differences by mutual concessions." *Continental Nat. Bank* v. *McGeoch* (1896), 92 Wis. 286, 312, 66 N. W. 606. "An adjustment of matters in dispute . . . by mutual concessions." *Chilton* v. *Willford* (1853), 2 Wis. 1, 40 Am. Dec. 399. "The mutual yielding of opposing claims; the surrender of some right or claimed right in consideration of a like surrender of some counter-claim." Anderson Law Dict. In *Bellows* v. *Sowles* (1883), 55 Vt. 391, 399, 45 Am. Rep. 621, it is said: "A compromise is the yielding of something by each of two parties, and can only exist when something is yielded by each party to it." A settlement may be the result of a compromise. It may also be brought about where there is no dispute or controversy between the parties, as in the case of an accounting and the striking of a balance or by agreeing on the amount to be paid on an unliquidated claim. 12 C. J. 314.

There is no evidence that appellant ever agreed to pay the bills incurred by appellee for the washing and cleaning of her damaged clothing or that appellee ever

agreed to accept such payment from appellant in satisfaction of her claim. This being true there was no error in the action of the court in sustaining the objection to the question asked the witness, or in the refusal to give instruction No. 20, tendered by appellant relating to a compromise and settlement and appellant's readiness and willingness to pay the cost of cleaning and repairing the damaged clothing.

Appellant contends the court erred in excluding the testimony of two witnesses, Bachman and Moore, as to the practicability of installing back-water traps in the sewers running from the hotel basement and connecting with the sewer in the alley. We have read and re-read the testimony of Bachman and fail to find where he was asked any such question. Moore testified that he was a civil engineer, a graduate of Purdue University, and had followed his profession twenty-four years, about one-third of his time being devoted to matters connected with sanitary drainage; that in such a hotel as was appellant's, with sanitary equipment and fixtures in the several suites of rooms and kitchen, public lavatories, toilets, slop-sinks, etc., sewer traps, ball-traps or other similar devices, if installed in the sewer connections would not do any good if water stood in the street above the basement floor and use of the equipment on the several floors was attempted, unless the connections in the basement were trapped separately, or put on a separate line; that, under such circumstances, the shutoff devices in the sewer would prevent use of the basement equipment during the time the sewer was blocked; that such basement equipment could not be used after the water in the sewer rose to a point above the level of the seats or openings, as the water from the sewer would then start coming in through each openings, whether toilet, closet or sink; that the sewage above the first floor, when the toilets, lavatories

and bath-rooms were used, would go through the connections in the basement and then go into the basement; that he had observed "these trappings on sewers" and had an opinion as to the "practicability or impracticability of these devices in a hotel of this character." He was then asked what that opinion was, and if he had been permitted to answer the question, he would have answered that they were impracticable. Was the action of the court in sustaining an objection and in refusing to allow the witness to answer this question reversible error?

Turning to appellant's motion for a new trial, we find that the only specification therein relating to the testimony of this witness is, error in excluding the offered testimony of Moore and sustaining appellee's objection to the question "wherein said witness was asked concerning the practicability or impracticability of *bell-traps* in sewer, as a safety installation and connections" (our italics) with buildings like appellant's hotel. Neither the witness Moore nor any other witness who testified in the case mentioned or referred to a bell-trap or claimed that such a trap would prevent the water from a sewer backing up and overflowing the basement in case of a heavy rain. Indeed, it does not require expert testimony to prove that a bell-trap is not intended or used for such a purpose. The purpose of a bell-trap is to prevent foul air, not water, from entering a building. It is defined in the Century Dictionary as follows: "A small stench-trap, usually fixed over the waste-pipe of a sink, or other inlet to a drain."

Appellant contends the court erred in giving instructions Nos. 9, 10, 13, 14, 15, 18, 19 and 21. Instruction No. 9 is a model instruction defining an act of God, and also tells the jury that if appellant knew, or by reasonable diligence could have known, the hotel basement flooded after heavy rainfall, and took no

steps to prevent it by placing the usual and common devices to prevent such flooding, or if it placed the trunks of appellee on the basement floor with such knowledge, and that such devices would have prevented the overflow of the basement, the fact that there was an unusual rainfall would be no defense. Instruction No. 10 told the jury an act of God which would excuse appellant from liability must not only be a proximate cause, but it must be the sole cause. If the injury was caused by an act of God commingled with the negligence of appellant as an efficient contributing concurring cause, and the damage would not have occurred except for such negligence of appellant, the latter would be liable if appellee was free from contributing negligence. There was no error in giving this instruction.

Instruction No. 13 was to the effect that it was not necessary that appellee should have informed appellant of the contents of the trunks or of the value thereof. Instructions Nos. 14, 15 and 19 relate to the act of appellant in placing the trunks in the basement with knowledge that the basement was subject to overflow, and correctly stated its duty and liability under such circumstances, and No. 19 correctly told the jury that the fact that there was an unusual rainfall would not excuse appellant for the failure to put in backwater traps or to provide racks or other common and usual devices upon which to place the trunks so as to prevent them from coming in contact with the backwater, if the use of such traps or racks would have been in the exercise of reasonable care. Instruction No. 21 was to the effect that it made no difference whether appellee was a guest or roomer, if the damage was caused by the negligence of appellant.

There was no error in giving any of these instructions.

Judgment affirmed.

Dausman, J., absent.