MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION v. KEISER.

[No. 27,047. Filed May 11, 1938. Rehearing denied September 27, 1938.]

*John J. Kelly, Oscar C. Hagemeier,* and *Lee L. Osborn,* for appellant.

*Orville Nichols, Winfield K. Denton,* and *Edgar Durre,* for appellee.

ROLL, C. J.—This action was commenced in the Starke Circuit Court by Emma Keiser against the Mutual Benefit Health and Accident Association, to recover on an insurance policy issued by appellant on the life of Omer Keiser who was accidentally killed February 27, 1931. Emma Keiser, appellee herein, was named beneficiary in the policy. On change of venue the case was tried in the LaPorte Circuit Court. The issues were formed by appellee's complaint in two paragraphs to which appellant filed answer in general denial and two paragraphs of special answer. The plaintiff replied in general denial to the special answers filed by appellant.

Before filing its answer to the complaint appellant filed a demurrer to each paragraph of complaint alleging that neither paragraph of complaint stated a cause of action. The demurrers were overruled and proper exceptions were saved. The jury returned a general verdict in favor of plaintiff, and also answered three interrogatories. Appellants filed a motion for judgment on the interrogatories notwithstanding the general verdict.

This motion was overruled and exceptions taken. The only questions presented on this appeal are: Did the court err in overruling appellant's separate demurrer to the first and second paragraphs of complaint, and did the court err in overruling appellant's motion for judgment notwithstanding the general verdict?

The first paragraph of plaintiff's complaint alleges the issuance of the policy of insurance here in question, a copy of which is set out in appellant's first paragraph of special answer, on the 7th day of November, 1927. The consideration for the issuance of the said policy was the payment of $25.00 cash and the further quarterly premium payments thereafter of $15.00 each or annual payment thereafter of $60.00 on April 1, of each year. By the terms of the policy the defendant insured the decedent against loss of life, limb, sight, or, time resulting directly and independently of all other causes from bodily injury sustained through purely accidental means . . . in the sum of $2,000.00 with an acceleration clause attached that after the first year's premium had been paid, each year's renewal of the said policy should add $200.00 to the death benefit until the same amounted to $4,000.00, and with the further privilege that when twenty full annual premiums had been paid, the death benefit of $4,000.00 might be continued in force thereafter at a yearly cost of $4.00, without a medical examination, which policy was designated in terms by writing therein contained as a "ten-year annual increasing policy." That the decedent paid the first premium of $25.00 and did continue to pay the quarterly premiums of $15.00 each quarter to and including the premium due on July 1, 1930. That the negotiations leading up to the issuance of the said policy, the making out of the application, payment of initial payment and delivery of the policy and the payment of each and every quarterly premium thereafter paid were all carried out and per-

formed through the agent of the said defendant, Frank Heilman.

The policy further provided that payment in advance of the premiums is required to keep the policy in continuous effect, and if any such dues be unpaid at the office of the association in Omaha, Nebraska, the policy should be terminated on the day such policy is due and that the acceptance of any premium on the policy shall be optional with the association . . .

The accidental death of the insured, Omer Keiser, on the 27th of February, 1931, was alleged and that prior to June, 1930, the decedent was ill, and upon his recovery the defendant through its authorized claim agent settled and compensated decedent under said policy for his disability and during said settlement said agent of the defendant informed said decedent that said policy would be cancelled and terminated at the next premium paying date and that the defendant company would no longer keep said policy in force and effect. That on June 7, 1930, the defendant's agent, Frank Heilman, did collect and receive from decedent the quarterly premium due on said policy for the period from July 1, 1930, to October 1, 1930, of $15.00. That thereafter and between said date and July 5, 1930, Frank Heilman did by letter return to said decedent the premium so collected and informed decedent that said company would not accept or receive the said premium and that the said policy was cancelled and void and of no effect, and said agent did thereafter call at decedent's house and did again inform decedent and this plaintiff that the defendant company had refused to receive the premium and had cancelled and forfeited the same and would accept no more premiums thereon. That both decedent and plaintiff were ready and willing and desired to pay said premiums, and but for said statements of said claim agent and said agent Frank Heilman, would have paid said premiums

and all future premiums thereafter; that said decedent and this plaintiff did believe the said statements of defendant's agent and did believe that said defendant had refused to receive said premium and cancelled said policy of insurance and being so misled and believing said statements and for that reason only, did not pay the premiums due on October 1, 1930, and January 1, 1931, of $15.00 each; that the statements of said claim agent and the agent, Frank Heilman, were untrue; that defendant company had not refused to receive any premium and had no intention of causing said policy to lapse or of cancelling or of forfeiting the same, and had no desire to lapse said policy but of which said facts decedent and plaintiff had no knowledge. That neither the decedent nor this plaintiff learned that said statements and representations of said agent were untrue until the 17th day of February, 1934, at which time defendant company informed this plaintiff in writing that decedent's payment of premium on June 7, 1930, for the period from July 1, to October 1, 1930, had never been tendered to them at the Home Office and had never been refused by said defendant company but that in ignorance of said payment to its authorized agent and upon the non-receipt of the premium at the Home Office the defendant company had entered on its books as of July 1, 1930, a record that said policy had expired for non-payment of premiums and that said company did cancel said policy for non-payment of premium.

That defendant never elected to refuse any premium and that neither decedent nor plaintiff ever intended that said policy should lapse. That all of the dealings and transactions relative to the said policy had been wholly with said agent, Frank Heilman, and said claim agent and all premiums were made to said agent and no dealings were had with the Home Office of said defendant company and by reason thereof plaintiff and plain-

tiff's decedent had a right to rely upon and believe the wrongful statements and representations of said agent, and that by reason of the aforesaid facts the policy of insurance remained in full force and effect to the date of decedent's death, and said accidental death of the said decedent was a risk insured under said policy, and defendant had no right to take advantage of decedent's default occasioned by its agent's false and untrue statements and representations. That as soon as plaintiff learned of the facts above enumerated she did tender to defendant the premiums for July 1, 1930, October 1, 1930, and January 1, 1931, with accrued interest, which tender was refused. That except as otherwise above alleged plaintiff and decedent have performed all the covenants and conditions in said insurnace contract on their part contracted to be done and performed.

The complaint further alleged the giving of notice of decedent's death of which no complaint is made. Then follows the prayer for judgment.

The second paragraph of complaint alleges in substance all the facts contained in the first paragraph and further alleged that the policy contained in large heavy type at the top thereof:

"Ten-year annual increasing policy."

That said provision of said policy make and constitute the same an annual policy and prevented the same from being terminated by the defendant during any policy year by refusal to receive tendered premiums thereon. That such refusal can only be valid and effective by such refusal being made upon any yearly anniversary thereof, and defendant's refusal could only be effective as of April 1, 1931, long after insured's death as herein set out. That the premium charged by defendant included compensation for carrying an additional risk each year of $200.00 until death benefits total $4,000.00, which

premium charge insured did pay and said premium charge did also compensate said defendant for carrying said risk of $4,000.00 at a cost of $4.00 per year after twenty years as set forth in the first paragraph of complaint. That in the policy year April 1, 1930, to April 1, 1931, decedent did pay quarterly premiums due April 1, and tendered premium due July 1; and defendant had no right or authority to attempt to terminate said insurance contract by refusing to accept a quarterly installment or premium without tendering back to decedent the unearned premium of such additional risk not then incurred. That said refusal of defendant to accept the premium due July 1, 1930, did not terminate said insurance contract but the same remained in full force and effect at the time of decedent's death.

The plaintiff also alleged the tender of the premiums due July 1, 1930, to April 1, 1931, plus interest which tender the agent refused and said tender was also made to the Home Office which was refused by the company. Also the plaintiff makes appropriate allegations relative to the notice of decedent's death to the defendant company, but no question is being raised as to proper notice having been given. The demurrer to the first and second paragraphs of complaint was for insufficient facts. The memorandum attached to the demurrer says that the complaint admits that the policy premiums were payable in quarterly payments of $15.00 each and that the acceptance of any premium on the policy shall be optional with the association and that the complaint further admits that the quarterly premium due July 1, 1930, was paid to defendant's agent, Frank Heilman, on or about that date, but Heilman returned the payment to Keiser on or before July 5, 1930, and told Keiser that the company refused to accept further premiums and that the policy was cancelled. The memorandum states that two more quarterly premiums fell due on this policy between

July 1, 1930, and the date of Omer Keiser's accidental death on February 27, 1931. None of these were paid nor tendered. That the right of defendant to terminate this policy by declining to accept a premium on any premium date is clear. That plaintiff seeks to avoid the refusal of defendant's authorized claim agent and local agent to renew the policy by quoting from a letter from defendant under date of February 17, 1934, to the effect that the July, 1930, premium had never been tendered to the Home Office and had never been refused by defendant.

The remaining part of the memorandum is an argument to the effect that the policy lapsed on July 1, 1930, for non-payment of premium.

The sufficiency of the first paragraph of complaint depends upon whether or not the facts alleged are sufficient to excuse the decedent from tendering the quarterly premiums due October 1, 1930, and January 1, 1931.

From the allegations of the complaint it appears clear the appellee's decedent did pay to the defendant's authorized agent, Frank Heilman, the premium due July 1, 1930. This quarterly premium was paid on June 7, 1930, but on or about July 5, 1930, Frank Heilman, the agent of the defendant company, returned said quarterly premium to appellee's decedent by letter stating therein that the company refused to accept said premium and to renew said policy and that the company had cancelled said policy and had refused to carry said risk any longer. That similar statements were made personally to appellee's decedent by said Frank Heilman some time thereafter; that said statements were false; that in truth and in fact said Frank Heilman did not forward said quarterly premium so paid by decedent on June 7, 1930, for the quarterly premiums due July 1, 1930, to the company at Omaha, Nebraska, and that said company did not refuse to continue said policy

in force and that said company had not instructed said agent, Frank Heilman, to inform appellee's decedent that they would not accept any further premiums on said policy or that they desired to cancel the same; and that appellee and appellee's decedent relied upon the false and untrue statements so made by said Frank Heilman and did not tender any premiums thereafter until immediately prior to the commencement of this suit; but for said false and untrue statements made by said Frank Heilman said premiums would have been tendered and said policy would have been kept in full force and effect up until the death of appellee's decedent. All of these allegations are admitted to be true by the demurrer. Are these allegations sufficient to excuse appellee from tendering the premiums due on October 1, 1930, and January 1, 1931? In the case of *Security Life Insurance Company of America* v. *Gottam* (1928), 87 Ind. App. 338, 156 N. E. 173, the appellant had issued a policy of insurance to the appellee. The appellee was unable to pay all of the premiums due on the policy in cash and executed a note for part payment of these premiums. Later he found himself in financial difficulties and unable to pay the premium and wrote appellant company to forward him two notes for a certain amount bearing interest at the rate of five per cent. The company forwarded appellee the notes but the notes designated six per cent interest. Before appellee issued the notes he struck out six per cent and inserted five per cent and returned the notes properly signed to the appellant who accepted them without observing the change in the rate of interest. Afterwards this change in the rate of interest was discovered by the appellant company and then followed correspondence between the parties with reference to this discrepancy in the rate of interest. Finally the appellant company lapsed the policy for non-payment of premium. It was

held in that case that after appellant noted on its books that appellee's policy had lapsed for non-payment of premiums, tender of performance by the insured was excused.

In the case of *The Phoenix Mutual Life Insurance Company* v. *Hinesley* (1881), 75 Ind. 1, 11, the court said:

"In said paragraph (meaning fourth paragraph of complaint), after alleging the execution of the policy in suit substantially as stated in the second paragraph of her complaint, the appellee further said, 'That the consideration for said policy was the payment by her annually, so long as the said William Hinesley should live, of the sum of $29.52, as follows: For the first four years, she was to pay one-half of said sum in money, the other half by a note payable at the death of said William Hinesley, unless sooner canceled by dividend, with interest at the rate of six per cent per annum; that after five years the appellant was to apply the annual dividend, which, the appellant said, would be equal to or greater than the note given in each previous year, to the payment of the interest on the outstanding notes at the rate of six per cent per annum, and in reduction of the said sum of $29.52, and the appellee was to pay the balance of said sum in money; that the appellee complied with all said conditions as to payment, until and including the payment due February 6th, 1874; that thereafter, and before the next annual premium became due, the appellant wrongfully and in violation of the agreement and contract as to the manner of payment of the said sum, and as to the rate of interest payable on the outstanding notes, demanded from appellee that she should pay the interest on the outstanding notes at the rate of seven per cent, and notified her that the rate of interest which said notes bore, to wit, six per cent, would not be received if tendered, and further notified her that no other or succeeding premiums would be received on said policy unless the rate of seven per cent was paid on said notes; that the appellee was ready and willing to pay the premiums on said policy according to the manner aforesaid, and to pay the lawful rate of interest on

said notes, and, after credit of the dividends due her, on the lawful rate of interest on said notes and then on the premiums, was ready and willing to pay the balance of said premiums found to be due, as the appellant well knew; that appellee refused to pay said rate of seven per cent interest on said notes, as she lawfully might, and thereafter, after her refusal and after the date when the premium for that year was due, the appellant declared said policy void and of no effect, and cancelled the same on its books; that said demand for seven per cent interest on said outstanding notes, and said notice that no other or succeeding premiums would be received on said policy, unless appellee would pay said rate of seven per cent, was wrongful, unlawful and oppressive, and in violation of the contract and agreement between her and the appellant, as to the payment of said premium, and excused payment or tender of payment of interest on said outstanding notes, and excused payment or tender of payment of premiums on said policy then or thereafter, and said policy continued to be in full force and effect; and that said William Hinesley died on the 24th day of June, 1876, and due notice and proof of his death were given the appellant on March 9th, 1877, and the appellant refused to pay said sum of $1,200.00. Wherefore, etc.'

"It is said by the appellant's counsel, in their brief of this cause, that 'this paragraph of complaint predicates itself upon the alleged wrongful demand of interest at seven per cent, when six only was payable. There were four notes of $14.76 each, amounting in all to $59.04.' If, as alleged, the appellant wrongfully, and in violation of its agreement with the appellee, demanded of her that she should pay the interest on the outstanding notes at the rate of seven per cent, when six per cent only was payable thereon, and notified her that six per cent interest would not be received, if tendered, and that no other or succeeding premiums would be received on said policy, unless the rate of seven per cent was paid on said notes, it is very clear, we think, that the appellee was thereby and thereafter excused from the performance of her part of her agreement with the appellant. Thus, it was held by this court, in *Turner* v. *Parry*, 27 Ind. 163, that 'When a party to an agreement gives notice to the

other of his determination not to perform the contract on his part, performance by the party receiving such notice is unnecessary.' In *Shaw* v. *The Republic Life Ins. Co.*, 69 N. Y. 286, the Court of Appeals of New York say: 'Where one party to a contract declares to the other party to it, that he will not make the performance on the future day fixed by it therefor, and does not, before the time arrives for an act to be done by the other party, withdraw his declaration, the other party is excused from performance on his part, or offer to perform, and may maintain his action for a breach of the contract when the day has passed.' *Hayner* v. *The American Popular Life Ins. Co.* 69 N. Y. 435. In our opinion, the facts stated in the fourth paragraph of complaint were sufficient to constitute a cause of action."

The case of *New York Insurance Company* v. *Lahr* (1923), 192 Ind. 613, 137 N. E. 673, was a case in which the insurance company marked on its books that the policy of appellee had been lapsed for non-payment of premium. The court said (p. 628):

"Appellant says that appellee made no tender of the premiums delinquent. It appears by the finding that he called at the New York office of appellant and offered to pay the premiums with compound interest, and it appears by the evidence that this was when he discovered that he was delinquent, and it also appears by the evidence that he was then informed that the company would do nothing for him. Long before that time, appellant had marked the policy lapsed, and the actuary of appellant stated on examination that the company would not have reinstated the policy, for there was no provision therefor."

The court then quotes 2 Bacon Life and Accident Insurance (4th ed.) Section 609, note 374:

"The marking of a policy on the books of a company as lapsed excuse further tender of performance by the insured."

May on Insurance (4 ed.) Section 358, says:

"Payment or tender of payment of premiums is not necessary where the insurers have already declared the policy forfeited, or done any other act which is tantamount to a declaration on their part that they will not receive it if tendered." See, also *Phoenix Mutual Life Insurance Company* v. *Hinesley, supra. Sourwine* v. *Supreme Lodge, etc.* (1894), 12 Ind. App. 447.

The case of *Combs* v. *Jefferson Standard Life Insurance Company* (1921), 181 N. C. 218, 106 S. E. 826, was a case the facts of which are very similar to the case at bar. In that case appellant's decedent was the holder of a policy in the appellee company. The company claimed that the failure to pay the last two premiums thereon forfeited the policy. The facts as we gather from the opinion tended to show that in 1915 plaintiff's intestate secured a policy for $3,000.00 at an annual premium of $106.32 payable on December 1 of each year with an extension provision of thirty days. The policy was pledged to the company as collateral security for a loan of money which had been paid off when due. The company retained possession of the policy after the loan was paid but plaintiff's intestate paid the premiums due in 1915 and 1916. In the latter part of November or December, 1917, an agent of the defendant company came to the home of the intestate and reminded him that his premium would soon be due or was already due and urged him not to allow the policy to lapse. In this conversation with the agent of the insurance company the insured stated that he had developed tuberculosis and that there was doubt if he could keep up the policy, etc. Upon learning of this fact the agent immediately changed his position and told the intestate that he had pledged the policy to the company as security for the loan and that the policy had lapsed and become void when he paid the loan and that the company would accept no more premiums on it; that the intestate was a

farmer, inexperienced in business; that his health was failing and he was growing worse and his nervous system had become affected and his capacity for work had been impaired. That he believed the representations of the agent to be true and for that reason he failed to pay the premiums due in 1917 and 1918; that the intestate was ready and willing to pay the premiums due in 1917 and 1918 and as soon as he ascertained that he had been imposed upon by the false and fraudulent representations of the defendant's agent, he instituted suit against the company for reinstatement, but died before the case was brought to trial. Then this action was brought by his administratrix upon the policy alleging in substance the above facts and contending that by reason of the false and fraudulent representations of the agent of the insurance company he failed to pay the premium due in 1917 and 1918, and but for such fraudulent representations of said agent the premiums would have been paid. The court held that there was liability under the policy and that the action of the agent excused the insured from tendering the premiums.

We are not persuaded that an insurance company can take advantage of and benefit by false, fraudulent and untruthful statements made by its agent to the injury of its policy holder. Such a position would certainly encourage false and fraudulent and corrupt conduct on the part of the insurance agents and this court is not willing to lend its support to such procedure. The plaintiff's decedent in this case at all times acted in good faith as shown by the allegations in the complaint. He was ready, willing and able to pay the premiums, but he was prevented from so doing by false, fraudulent, and untruthful statements and without the actual authority of the insurance company to make such representations.

From the complaint it is clear that the insurance company had no knowledge of such false and fraudulent

representations of its agent. The premium that was paid by appellee's decedent in June, 1930, to the agent of appellant company was never forwarded to the company by such agent and the company had no knowledge that the premium had in fact been paid to its agent. In ignorance of this fact the company marked on its books that the policy had lapsed for non-payment of premiums.

It seems to us clear that the facts were such as to excuse appellee's decedent from further tendering of the premiums and as soon as the true facts were learned by plaintiff the premiums with interest were tendered. These facts all appear by the allegations of the complaint. We therefore hold that the first paragraph of plaintiff's complaint states a good cause of action and the court did not err in overruling the demurrer thereto. If we are correct in the above holding the second paragraph of complaint likewise states a good cause of action.

Appellant relies heavily upon the case of *Mutual Benefit Health & Accident Assn.* v. *Caver* (1934), 169 Miss. 554, 152 So. 897, but we have read that case very carefully and find nothing therein that lends support to appellant's contention, or that is inconsistent with the holding herein.

Appellant contends that the answers of the jury to the interrogatories are irreconcilable with the general verdict, and, therefore, the court erred in overruling their motion for judgment notwithstanding the general verdict. The interrogatories and answers thereto are as follows:

1. "Did the defendant, Mutual Benefit Health and Accident Association refuse to accept the premium due July 1, 1930, on the policy sued on?
A. Yes.
2. Did the agent Heilman return to Omer Keiser

the $15.00 paid by Keiser to Heilman for the premium due July 1, 1930?

A. Yes.

3. If your answers to interrogatories numbers one and two are in the affirmative, then did Omer Keiser accept the $15.00 so returned to him by the agent Heilman?

A. Yes."

It is appellant's contention that in as much as the jury answered yes, to interrogatory number one they thereby found specifically that the Mutual Benefit Health and Accident Association refused to accept the premium that was tendered and paid to the agent July 1, 1930, and that it had a right to refuse the payment of this premium under the terms of the policy, and, therefore, it had a right to cancel the policy.

It is a settled law in this state and the citation of authorities is unnecessary to support it, that if the answers to the interrogatories can be reconciled with the general verdict upon any reasonable supposed hypothesis the general verdict must stand. We think the answer to the interrogatory is entirely consistent with the general verdict and with the averments of the complaint. The complaint alleges and we assume the evidence supported the averment that immediately before the bringing of the suit in February, 1934, premiums were tendered to the insurance company for the quarters beginning July 1, 1930; October 1, 1930, and January 1, 1931, and that they were refused by the company.

The appellant assumes that the jury in answering the interrogatory in the affirmative was equivalent to saying that the company refused to accept the premium due July 1, 1930, at that time or immediately thereafter, but it will be noted that no time is fixed in the interrogatory as to when the company refused to accept the premium. It is, therefore, very reasonable to sup-

pose that the jury thought the interrogatory referred to a refusal to accept the premium due July 1, 1930, at any time before the suit was commenced and this is a reasonable hypothesis, and, therefore, under the well-recognized rule above stated the general verdict and the answer to interrogatories can be reconciled and therefore the general verdict must stand. See *Graham* v. *Payne* (1889), 122 Ind. 403, 24 N. E. 216.

We hold that the answers to interrogatories are not in irreconcilable conflict with the verdict, and, therefore, there was no error in overruling appellant's motion for a verdict *non obstante veredicto*.

Judgment affirmed.